UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| JEREMY J. PETERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 2:09-CV-00029-PMD |
| v. ) | |
| ) | |
| FIRST HEALTH LIFE & HEALTH ) | **ORDER** |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the court for review of Defendant First Health Life & Health Insurance Company's ("Defendant") decision to revoke Plaintiff Jeremy J. Peterson's ("Plaintiff") health benefits under a plan governed by ERISA.[1] Plaintiff brought this lawsuit under ERISA, after Defendant affirmed the rescission of his health insurance coverage based on misrepresentations in Plaintiff's application for insurance regarding his pre-existing condition of left facial arteriovenous malformation ("AVM"). The parties filed the Joint Stipulation and memoranda in support of judgment pursuant to the court's Specialized Case Management Order for ERISA benefits cases. For the reasons set forth herein, the court directs entry of judgment in favor of Plaintiff.

## BACKGROUND

On February 20, 2006, Plaintiff became a full time employee of Twin Rivers Capital, LLC ("Twin Rivers"). Effective May 1, 2006, Plaintiff had health insurance coverage under an employee welfare benefit plan sponsored by Twin Rivers and fully insured by BlueCross BlueShield of South Carolina ("BCBSSC"). The pre-existing condition exclusion under the

---

[1] Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.

1

BCBSSC policy ended on February 20, 2007. On June 8, 2007, Plaintiff completed an Application for Insurance with Defendant as Twin Rivers was switching carriers for their group health coverage.

Plaintiff answered "No" to the following questions on the application:

**1. Have you or any of your dependents been treated for any medical condition during the last 12 months for which medical expenses incurred exceeded $3,000? ☐ Yes ☐ No**

**2. Have you or any dependents ever been diagnosed as having, consulted a doctor or practitioner for, been treated, tested or received therapy for, or had any indications of the following: . . .**

**o. Any testing, surgery, and/or hospitalization recommended that has not been scheduled yet? ☐ Yes ☐ No**

**p. Been seen, treated, consulted, or tested for any other disease, disorder, or condition not listed above? ☐ Yes ☐ No**

Plaintiff's answer to the first question indicated that he had not been treated for any medical condition during the last 12 months for which the medical expenses exceeded $3,000. However, Plaintiff had undergone four separate surgical procedures for his AVM in the previous twelve months, the costs of which undisputedly exceeded $3,000. (J.S. at Def's Ex. 1-32 to 1-40.) In his answer to question 2(o), Plaintiff indicated that no testing, surgery, or hospitalization had been recommended for him but not scheduled. However, surgical records from September 18, 2006 indicate that Plaintiff would require follow up arteriography of his AVM in one year's time, by September 18, 2007. (J.S. at Pl's Ex. 1-28.) Finally, in Plaintiff's answer to question 2(p) he indicated that he had not been treated for any disease or disorder not listed on his application. However, AVM is not listed on the application, and Plaintiff has been treated for that disorder. (J.S. at Pl's Ex. 1-1; 1-2.)

On June 1, 2005, Plaintiff began a course of treatment at the Swedish Medical Center in Englewood, Colorado for AVM. Between June 1, 2005 and September 14, 2006, Plaintiff received, on a monthly basis, a total of fifteen (15) treatments at the Swedish Medical Center. After the treatment on September 14, 2006, Plaintiff's treating physician, Dr. Wayne Yakes felt that Plaintiff was at the end of his therapy. Plaintiff was instructed to follow up in one year's time. (J.S. at Pl's Ex. 1-20.) On July 30, 2007, Plaintiff went back to the Swedish Medical Center for arteriographic evalution. This course of treatment was authorized by Defendant. (J.S. at Pl's Ex. 1-30.) The medical record states that Plaintiff "denies any bleeding episodes, pain, or changes since his last treatment in September 2006. He was found to be at end-treatment at that time." (J.S. at Pl's Ex. 1-31.) On July 30, 2007, Plaintiff underwent an evaluation of the AVM, as well as a puncture repair of two areas. Upon discharge, he was instructed to follow up in six months for further arteriographic evaluation. (J.S. at Pl's Ex. 1-35.)

Subsequent to Plaintiff's July 30, 2007 procedure, the Swedish Medical Center submitted a claim for benefits to Health Plan Services, which served as the third party administrator for the group plan. Upon receipt of the claim, Plaintiff's case was referred to the RI Examiner and Claims Manager. The case, along with a completed rescission checklist, was eventually referred to underwriting. (J.S. at Pl's Exs. 1-13; 1-14; and 1-15.) By way of a letter dated November 27, 2007, Health Plan Services notified Plaintiff that his coverage under the group health plan was rescinded to the original effective date of July 1, 2007. (J.S. at Pl's Ex. 1-5.) Under the terms of the plan, Plaintiff's insurance could be terminated on the date that Defendant determined that Plaintiff had "committed an act of fraud or made an intentional misrepresentation of material fact under the terms of the Policy." (J.S. at Ex. 2-40.) In the termination letter dated November 27, 2007, Health Plan Services stated: "Please note that questions #1 and #2o and p, on the

enrollment form were answered inappropriately in light of the aforementioned medical history. Had our underwriters been aware of your past medical history we would have rated the group differently according to the First Health Life & Health Insurance Company's underwriting guidelines." (J.S. at Pl's Ex. 1-8.)

Plaintiff claims that it was unreasonable for First Health to rescind his coverage and deny the claims for benefits submitted by his health care providers. On January 6, 2009, Plaintiff filed this action against Defendant alleging causes of action for failure to pay benefits and breach of fiduciary duty. Defendant filed an Answer on March 3, 2009. Both parties filed a comprehensive joint stipulation with relevant evidence, and both parties filed cross-memoranda in support of judgment. Each side filed a Reply to the other side's Memorandum in Support of Judgment.

## ANALYSIS

**A.     Standard of Review**

There are two separate questions before the court in this matter. First, the court must determine whether the appropriate standard of review is *de novo* or abuse of discretion. After making that determination, the court must then apply that standard of review to Defendant's decision to rescind Plaintiff's health benefits and determine whether Plaintiff's benefits should be reinstated.[1]

Plaintiff and Defendant do not dispute the applicable standard of review to be used by the court in reviewing the decision to rescind Plaintiff's benefits. Both parties agree that they are unable to locate plan language giving the plan administrator the discretion to interpret the terms

---

[1] A number of other potentially contentious issues have been stipulated to by the parties. The parties agree that these matters are subject to ERISA, are governed by "the Plan," and that Plaintiff properly exhausted all administrative remedies.

4

of the plan. Therefore, the *de novo* standard of review applies. However, both parties state that if the plan does give the administrator the discretion to interpret the terms of the plan, then an abuse of discretion standard would apply.

The *de novo* standard of review allows the court to examine all of the evidence in the record and decide whether or not the plaintiff in a case is entitled to benefits without giving any deference to the plan administrator's decision to deny or terminate benefits. *See Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993). Under the abuse of discretion standard, on the other hand, the plan administrator's "decision will not be disturbed if it is reasonable, even if this court would have come to a different conclusion independently." *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997).

ERISA itself does not specify the standard of review that should be used by courts when reviewing denials of disability benefits. The Supreme Court, applying principles of trust law, held that the determining factor in which standard of review applies is whether the decisionmaker had reserved the discretionary power to make such a decision. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). *See also Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522 (4th Cir. 2000) ("It is well established that a court reviewing the denial of disability benefits under ERISA initially must decide whether a benefit plan's language grants the administrator or fiduciary discretion to determine the claimant's eligibility for benefits, and if so, whether the administrator acted within the scope of that discretion."). "If a plan does not clearly grant discretion, the standard of review is de novo." *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264 (4th Cir. 2002). If the plan does explicitly grant discretion to an administrator or fiduciary, the appropriate standard of review is abuse of discretion. *See Johannssen v. District No. 1, Pac. Coast District*, 292 F.3d 159, 168 (4th Cir. 2002).

As stated above, Plaintiff and Defendant do not dispute the applicable standard of review to be used by the court in reviewing the decision to rescind Plaintiff's benefits. Both parties agree that they are unable to locate plan language giving the plan administrator the discretion to interpret the terms of the plan. Therefore, after reviewing the plan language, the Court agrees with the parties that the *de novo* standard of review applies.

**B.** **Rescission**

The court now turns to the issue of whether Defendant's decision to rescind Plaintiff's health benefits was proper. Under the *de novo* standard of review, the court examines all of the evidence in the record, and based on this evidence, determines if Defendant's rescission of Plaintiff's health insurance policy was proper.

**1. Plaintiff's arguments as to why Defendant's rescission of Plaintiff's health insurance coverage was unreasonable.**

Plaintiff argues that despite the policy being subject to ERISA, South Carolina law still determines the right of the insurer, First Health, to rescind Plaintiff's coverage for misrepresentations made in an application for insurance. Under South Carolina law and as stated by the South Carolina Supreme Court in *Lanham v. Blue Cross and Blue Shield of S. Carolina Inc.,* 349 S.C. 356, 563 S.E.2d 331 (2002):

> [I]n order to void a policy of insurance on the ground that fraudulent representations were made in the procuring of such policy, the burden of proof rests upon the insurer to show, by clear and convincing evidence, not only that the statements complained of were untrue, but in addition thereto that their falsity was known to the applicant, that they were material to the risk, were relied on by the insurer, and that they were made with the intent to deceive and defraud the company.

*Id.* at 364, 563 S.E.2d at 334.

Of these five elements, Plaintiff argues that Defendant has failed to show that Plaintiff made the false statements on his application with the intent to deceive and defraud Defendant

6

and has failed to show that the false statements were material to the risk. As to the intent to deceive, Plaintiff argues that "[t]he administrative record is devoid of **ANY** evidence showing that Mr. Peterson intended to deceive and defraud First Health." Pl.'s Mem. at 5 (emphasis in original). According to Plaintiff:

> In an Affidavit dated July 15, 2008, which was submitted to First Health, Mr. Peterson stated that he had no reason to intentionally submit any misleading information. (J.S. at Pl.['s] Exs. 1-3; 1-4.) Mr. Peterson was applying for coverage under a group health plan. Because this was a group health plan governed by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and Mr. Peterson had creditable coverage from his prior group health plan, coverage for any preexisting condition was assured. During the process of obtaining coverage through First Health, Mr. Peterson (along with his co-workers) met with Dave Williams ("Mr. Williams"), the insurance agent/broker for the group plan. Mr. Peterson asked Mr. Williams questions specifically relating to the policy's pre-existing condition provision. (J.S. at Pl.['s] Ex. 1-3.) Mr. Williams knew that Mr. Peterson had a vascular malformation. (J.S. at Pl.['s] Ex. 1-4.) Unlike diabetes or heart disease, Mr. Peterson cannot conceal his condition.

Further, Plaintiff argues that First Health has failed to prove by clear and convincing evidence that Mr. Peterson's misstatement was material to the risk it assumed. Plaintiff argues that because the policy at issue was a group policy, the information provided by Plaintiff in his application could not have been used to determine whether or not Plaintiff was eligible for coverage. However, Plaintiff recognizes that the information in Plaintiff's application could be used for underwriting purposes to determine the premium amount. Plaintiff argues that there is no evidence in the administrative record to support a higher premium. In a note dated November 8, 2007, HealthPlan Services stated: "U/M WOULD RATE FOR AVM $8800 - $22,000.00 TOTAL PREMIUM/RATE WOULD NOT HAVE CHANGED AT $8800.00. . . . IF $22K USED, PREMIUM WOULD HAVE BEEN HIGHER DUE TO SEVERITY RATE $22K." (J.S. at Pl.['s] Ex. 1-14.) Plaintiff completed his Application for Insurance on June 8, 2007. Plaintiff argues that if he had checked "yes" to questions #1 and #2o and p, and if First Health had

7

requested a copy of his medical record from the Swedish Medical Center, First Health would have received the medical record for the date of service September 14, 2006. According to the medical record prepared for that date of service, Dr. Yakes felt that Plaintiff had completed his therapy for his facial vascular malformation and it was recommended that Plaintiff follow up in one year for further evaluation. Plaintiff argues that "[g]iven the information in the notes from Mr. Peterson's September 14, 2006 date of service, there is no support for rating Mr. Peterson's condition at a higher premium. The premiums paid by Mr. Peterson's employer would have remained the same." Pl.'s Mem. at 7.

Therefore, Plaintiff concludes that because Plaintiff's false statement was not made with the intent to deceive nor was material to the risk, First Health's decision to rescind Plaintiff's coverage was not reasonable. Plaintiff asks the Court to: (1) determine that First Health did not make a reasonable decision when it rescinded coverage; (2) order that First Health re-instate his coverage to the original effective date of July 1, 2007; (3) order that First Health is responsible for payment of the claims submitted by Mr. Peterson's health care providers for services provided to him during the time frame of July 1, 2007 through November 31, 2007; (4) order that First Health reimburse Mr. Peterson the $9,281.11 that he has personally paid his health care providers for services provided to him during the time frame of July 1, 2007 through November 31, 2007; and (5) award attorney's fees and costs of this action.

2. **Defendant's arguments as to why rescission of Plaintiff's health insurance coverage was reasonable.**

Defendant argues that under Federal Common Law, which applies to this case, First Health was entitled to rescind Plaintiff's policy based on the material misrepresentations in his application. Defendant argues that because ERISA is silent as to the effect of material misrepresentations in an application for health insurance, federal common law controls in such

cases. Def's Mem. at 4 (citing *Davies v. Centennial Life Ins. Co.,* 128 F.3d 934, 943 (6th Cir. 1997); *Shipley v. Ark. Blue Cross and Blue Shield,* 333 F.wd 898 (8th Cir. 2003)). Defendant then notes that the majority of federal courts have identified a right of rescission under ERISA. Def's Mem. at 5. Defendant notes that, specifically, the Fourth Circuit in *Griggs v. E.I. DuPont de Nemours & Co.,* 385 F.3d 440 (4th Cir. 2004) held that actions seeking rescission are equitable actions that may be pursued under ERISA. Defendant argues that under Federal Common law, an insurer need only show a material misrepresentation by the insured to rescind a policy, and Defendant argues that an intent to deceive is not an element necessary for rescission under Federal law. Defendant states that it has shown that Plaintiff's misrepresentations were material to the risk it assumed in underwriting Plaintiff's group health plan. According to Defendant, "it is undisputed that First Health would have rated Plaintiff's group health plan differently had it known about his preexisting condition of AVM. Consequently, First Health would have charged Plaintiff's employer a higher premium to offset the costs associated with Plaintiff's known condition of AVM. However, based on the material misrepresentations in Plaintiff's application, First Health assigned a different rating to Twin Rivers, which resulted in Twin Rivers being charged a lower premium payment. Therefore, First Health has established that Plaintiff's misrepresentations were material." Def.'s Mem. at 8-9.

Therefore, Defendant concludes that rescission of Plaintiff's coverage complied with the application for insurance and the governing plan, that rescission is permitted under ERISA for material misrepresentations, and that, therefore, Defendant's rescission of Plaintiff's policy in light of material misrepresentations on his application for insurance was reasonable.

### 3. The Court finds that Defendant's rescission of Plaintiff's health insurance coverage was unreasonable.

As noted by Defendant, generally, the right to rescind ERISA coverage obtained by misrepresentation is well established. *See Griggs,* 385 F.3d 440 (4th Cir. 2004). The question, however, becomes is that right of rescission subject to limitations imposed by state law because of ERISA's savings clause. Generally, ERISA "supersede[s] any and all State laws" that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). However, "the savings clause," 29 U.S.C. § 1144(b)(2)(A), excludes from preemption state law that "regulates insurance." "State law" includes statutes, regulations and decisional law. 29 U.S.C. § 1144(c). So the question remains, whether state or federal law governs the right of an insurer to seek rescission of coverage for misrepresentation in an application. In this case, Plaintiff argues that First Health's right to rescind Plaintiff's policy is limited by South Carolina law that requires both materiality and the intent to deceive in order for an insurer to rescind a policy based on a misrepresentation in an application for insurance. Defendant argues, however, that Federal common law and not South Carolina law controls its right to rescind Plaintiff's coverage for material misrepresentations made in his application for coverage.

The Court finds that while Defendant is correct that rescission is an available remedy under ERISA for misrepresentations in applications for insurance, that right of rescission is subject to South Carolina law, which limits rescission to cases where the insured made misrepresentations were material to the risk and were made by the insured with the intent to deceive the insurer. Few cases in the Fourth Circuit pertain to rescission for misrepresentation by an insured under ERISA. As discussed above, the Fourth Circuit, however, has found that rescission can be appropriate equitable relief under ERISA. However, the right of rescission is

subject to limitations imposed by state law. In *Beard v. TMG Life Ins. Co.,* 1992 WL 152471 (4th Cir. Jul. 22, 1992), a *per curiam* decision, the Court of Appeals was faced with the issue of whether an insurer could rescind insurance coverage based on misrepresentations made before that coverage was issued. The insurer had rescinded Beard's coverage on the grounds that he made "material misstatements" with regard to his health condition on his application for insurance. Citing ERISA's savings clause, 29 U.S.C. §1144(b)(2)(A), the Fourth Circuit noted: "Virginia law controls on the question of whether TMG's rescission was proper." *Id.* The Court then concluded that although rescission is an available equitable remedy for a material misrepresentation in an application for coverage, it was not an appropriate remedy in *Beard* because the insurer failed to carry its burden of showing a knowing misrepresentation as required by Virginia law. *Id.*

Although Defendant points to other circuits that have held that Federal Common law controls an insurer's right to rescind coverage for a material misrepresentation, that case law is not controlling and in light of the Fourth Circuit's decision in *Beard,* 1992 WL 152471, this Court finds that Defendant's right of rescission is subject to limitations imposed by South Carolina law.

Under South Carolina law, misrepresentations in insurance applications are actionable only if they are fraudulent misrepresentations. *See Primerica Life Ins. Co. v. Ingram,* 365 S.C. 264, 269, 616 S.E.2d 737, 739 (Ct. App. 2005); *Lanham v. Blue Cross & Blue Shield,* 349 S.C. 364, 563 S.E.2d 334-35 (2002) (to void a policy on material misrepresentations the insurer must show a false statement was made with the intent to deceive in addition to materiality of the misstatement); *Gasque v. Voyager Life Ins. Co. of S.C.,* 288 S.C. 629, 344 S.E.2d 182 (Ct. App. 1986) (insured must intend to deceive the insurance company). An insurer may avoid coverage

under an insurance policy when it establishes by clear and convincing evidence: (1) that the insured made a false statement in the insurance application; (2) that the insured knew was false when made; (3) that was material to the risk covered in the policy; (4) that the insurer relied on; and (5) that was made with the intent to deceive and defraud the insurer. *See Floyd v. Ohio Gen. Ins. Co.,* 701 F. Supp. 1177, 1188 (D.S.C. 1988); *Lanham,* 349 S.C. 356, 563 S.E.2d 331; Primerica, 365 S.C. 269, 616 S.E.2d 739.

In this case, even assuming Defendant can establish elements one through four by clear and convincing evidence, the Court agrees with the Plaintiff that there is no evidence in the record to support a finding that Plaintiff made the misrepresentations on his application with the intent to deceive and defraud First Health. First, Plaintiff was applying for coverage under a group health plan. Because this was a group health plan governed by HIPAA and because Plaintiff had creditable coverage from his prior group health plan, Plaintiff was guaranteed coverage for his preexisting condition. Second, when filing out his application for insurance, Plaintiff met with the insurance agent for the group plan and asked the agent specific questions about the policy's pre-existing condition provision. Plaintiff specifically told the agent about his past treatment for AVM, and unlike diabetes or heart disease Plaintiff's facial AVM cannot be concealed. "[T]he intent with which representations or misstatements of facts are made is a thing that is locked up in the heart and consciousness of the applicant. It may be shown by his express words, or it may be deduced from his acts and the facts and circumstances surrounding the making of the misrepresentations, though on this question the mere signing of the application containing the answers alleged to be false is not conclusive." *Johnson v. New York Life Ins. Co.,* 165 S.C. 494, 164 S.E.2d 175 (1932). Under the circumstances of this case, the Court finds that the Defendant has failed to offer any evidence showing that Plaintiff intended to deceive

Defendant when filing out his application for insurance. Although, Plaintiff may have been negligent in filing out his application and checking "no" to each answer, under South Carolina law, negligence is not enough to justify First Health's decision to rescind of Plaintiff's coverage. Thus, the Court finds that First Health's decision to rescind Plaintiff's health insurance coverage was unreasonable under the facts of this case.

C.     **Attorney's Fees**

Lastly, Plaintiff requests that the Court grant him reasonable attorney's fees. In *Reinking v. Philadelphia Am. Life Ins. Co.,* 910 F.2d 1210 (4th Cir. 1990), the Fourth Circuit adopted a five factor test for determining the award of attorney's fees. These five factors are: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of opposing parties to satisfy an award of attorney's fees; (3) whether an award of fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the party requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *Id.* at 1217-18. "This five factor approach is not a rigid test, but rather provides general guidelines for the district court in determining whether to grant a request for attorneys' fees." *Quesinberry v. Life Ins. Co. of N. Am.,* 987 F.2d 1017, 1029 (4th Cir. 1993).

The Court finds that in this case Plaintiff is not entitled to an award of attorney's fees. While Plaintiff has demonstrated the ability of First Health to satisfy an award of attorney's fees, all of the other four factors weigh in favor of denying attorney's fees. First, there is no evidence in the record of First Health's bad faith in rescinding Plaintiff's coverage. Plaintiff made a misrepresentation on his health insurance application, and in some jurisdictions a material misrepresentation is all that is required to rescind coverage. This Court holds today that in the

Fourth Circuit an insurance company's ability to rescind coverage for misrepresentations in an application is limited by state law—in South Carolina, for instance, the added element of intent to deceive; however, case law on the applicable law for misrepresentations on an application for insurance in an ERISA governed plan is very sparse and this question appears to be one of first impression in this District. Therefore, in this case, there is a lack of evidence of bad faith on the part of First Health. In addition, the lack of clear legal precedent on this issue also weighs in favor of denying attorney's fees as to factor five—the relative merits of the parties' positions. As to the second factor, an award of attorney's fees against First Health would not be likely to deter other persons acting under similar circumstances. Lastly, as to the third factor, Plaintiff brought this action to restore coverage for himself for a decision that was made in regards to his specific situation and as to hisw specific application as opposed to an action to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself. Therefore, in light of the preceding factors as applied to the facts of this case, the Court declines to award attorney's fees.

## CONCLUSION

For the foregoing reasons, the court finds that First Health's rescission of Plaintiff's health insurance benefits was unreasonable under the circumstances of this case. Accordingly, the court directs entry of judgment in favor of Plaintiff, and awards Plaintiff health benefits under the Plan retroactive to July 1, 2007.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**July 9, 2010**